UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
BRIAN PLATT,

                    Plaintiff,

        - against -                                MEMORANDUM & ORDER
                                                   08-CV-2953 (JS)(ARL)
THE INCORPORATED VILLAGE OF
SOUTHAMPTON, THE BOARD OF TRUSTEES
OF THE INCORPORATED VILLAGE OF
SOUTHAMPTON, ROBERT MARK EPLEY,
Individually and as Mayor of The
Incorporated Village of Southampton,
BONNIE M. CANNON, Individually and as
Trustee of The Incorporated Village
of Southampton, NANCY C. MCGANN,
Individually and as Trustee of The
Incorporated Village of Southampton,
PAUL L. ROBINSON, Individually and as
Trustee of The Incorporated Village
of Southampton, WILLIAM F. BATES,
Individually and as Trustee of The
Incorporated Village of Southampton,
and WILLIAM WILSON JR., Individually
and as Chief of Police of The
Incorporated Village of Southampton,

                    Defendants.
------------------------------------X
APPEARANCES:
For Plaintiff:        Steven A. Morelli, Esq.
                      Anthony Christopher Giordano, Esq.
                      Law Offices of Steven A Morelli, P.C.
                      One Old County Road, Suite 347
                      Carle Place, New York 11514

For Defendants:       Steven C. Stern, Esq.
                      Miranda, Sokoloff, Sambursky, Slone,
                      Verveniotis, LLP
                      240 Mineola Boulevard
                      Mineola, New York 11501

SEYBERT, District Judge:

                            INTRODUCTION

        On July 21, 2008, Plaintiff, Brian Platt ("Platt"), filed

a Complaint against the Incorporated Village of Southampton (the "Village"), the Board of Trustees of the Village (the "Board"), Mayor Robert Mark Epley, Bonnie M. Cannon, Nancy C. McGann, Paul L. Robinson, William F. Bates, and William Wilson Jr. ("Wilson") (collectively, "Defendants"). The Complaint alleges that the Defendants discriminated and retaliated against him in violation of his rights to free speech, equal protection, and substantive due process under the 14th Amendment. Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, the American with Disabilities Act of 1990, 42 U.S.C. §§ 12112(b) and 12203(a), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and supplemental New York State law claims under the Human Rights Law, N.Y. Exec. Law § 290, et seq.

Pending before the Court is Defendants' motion to dismiss based on (1) Plaintiff's failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (2) Plaintiff's lack of standing, and (3) the statute of limitations. Plaintiff also seeks permission to amend the Complaint. For the reasons stated below, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's cross-motion for permission to amend is DENIED.

Plaintiff is a resident and domiciliary of Suffolk County, New York, and was a Village employee at the time of the Complaint. (Pl's Comp. ¶ 5.) Plaintiff was a full-time police officer at the Southampton Village Police Department (the "Police Department"), and was also a member of the Southampton Village Police Benevolent Association Inc. ("PBA"). (Id. at ¶¶ 10, 13.) Plaintiff alleges that from 2003 through 2006, then Lieutenant, William Wilson ("Wilson") was having an affair with seasonal police officer Kim McMahon ("McMahon"). (Id. at ¶ 16.) Plaintiff claims that, as a result of his engaging in protected activity, including his reporting of the affair between Wilson and McMahon, he was subjected to a host of civil rights violations.

In November 2004, Plaintiff, along with two fellow police officers, met with Village Trustee Harold Steudte ("Steudte"), and informed Steudte about the purported affair between Wilson and McMahon. (Id. at ¶ 17.) The officers complained that because of this affair Wilson gave McMahon preferential treatment. Id. Plaintiff has not plead that any retaliatory action was taken by Defendants at that time. Approximately one year later, on November 13, 2005, Plaintiff took medical leave from the Police Department because of a back injury and Post Traumatic Stress Syndrome that he

---

[1] The Court deems the factual allegations in Plaintiff's Complaint as true for the purposes of this motion.

acquired during an on-duty incident. (<u>Id.</u> at ¶ 24.) On or about December 27, 2005, Sergeant Christopher Broich filed an EEOC Charge against the Village of Southampton and Lars King, the Chief of Police at the time, alleging discrimination based on race, disability, and national origin. (<u>Id.</u> ¶ 21.) The EEOC Charge, specifically named Plaintiff as a witness stating that "he is an 'excellent witness' because he is 'privy to information shared in the department concerning promotion opportunities.'" (<u>Id.</u> ¶ 22.) Defendants were served with this Charge. (<u>Id.</u>)

On August 25, 2006, approximately nineteen months after Plaintiff's meeting with Steudte regarding the alleged affair, Wilson, who had been appointed Chief of Police six weeks prior, issued General Order #83 ("Order 83"). (<u>Id.</u> at 25). Order 83 set operational guidelines for officers on leave from duty for various reasons, including as a result of injury. (<u>Id.</u> at ¶ 25.) It required officers to report to a supervisor via telephone and remain at home unless permission to leave was granted by the Police Department Administration. (<u>Id.</u> at ¶ 26.) ¶ 25]. Plaintiff claims that this action by Wilson violated the Collective Bargaining Agreement ("CBA") between the Village and the PBA, discriminated against him based on his disability, and retaliated against him for being named a witness in Broich's complaint and for reporting Wilson's affair. (<u>Id.</u> at ¶¶ 25, 27, 28.)

Although Order 83 was issued on August 25, 2006,

Plaintiff was directed to comply with it commencing on September 7, 2006. Subsequently, on September 12, 2006, Order 83 was amended ("Amended Order 83").[2] In connection with the original Order 83, on September 13, 2006, Plaintiff sent Wilson a formal grievance claiming that Order 83 confined him to his home and his Post Traumatic Stress Syndrome was "greatly exacerbated" as a result. (<u>Id.</u> at ¶¶ 38, 39.) Wilson provided Plaintiff with a copy of Amended Order 83. (<u>Id.</u> at ¶ 42.) Plaintiff, in addition to the grievance, filed a Charge of Discrimination with the EEOC. (<u>Id.</u> at ¶ 40.) Plaintiff also served grievances to Mayor Epley on September 18, 2006, and to the Board on September 22, 2006, to which the Mayor denied and the Board never responded. (<u>Id.</u> at ¶¶ 44, 45.) Accordingly, Plaintiff has filed this action seeking relief based on retaliation and discrimination. Defendants have moved to dismiss the Complaint in its entirety (1) for failure to set forth a First Amendment, due Process violation, discrimination, or Title VII claim, (2) because Section 1983 claims are time-barred, and (3) because Plaintiff lacks standing. Plaintiff, in the contrary, has cross-moved to amend the Complaint.

DISCUSSION

I.  <u>Defendant's Motion to Dismiss</u>

    A.  <u>Standard of Review for a Rule 12(b)(6) Motion</u>

        In <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct.

---

[2] Amended Order 83 was approved by both the Village and the PBA.

5

1955, 167 L. Ed. 2d 929 (2007), the Supreme Court disavowed the half-century old standard set forth in Conley v. Gibson that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), (overruled by Bell Atl. Corp., 127 S. Ct. 1955 (2007). Holding that "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough," the Supreme Court expressly rejected the standard in favor of a requirement that the plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp., 127 S. Ct. at 1969, 1974. The Court explained that the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. To be clear, Bell Atlantic does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." Id. at 1974.

The Supreme Court offered further clarification of this standard in a recent decision, explaining that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009). However, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In applying this standard, the district court must still accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).

In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998.) Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002). "Of course, it may also consider matter of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner, Inc., 837 F.2d 767,773 (2d Cir. 1991). Consideration of materials beyond those just enumerated requires conversion of the 12(b)(6) motion to dismiss to one for summary judgment under Rule 56. See id.

B.    Initial Matters

As outlined later in this Order, Plaintiff must demonstrate that any retaliation or discriminatory treatment that

he suffered occurred as a result of his protected activity. Even if Plaintiff engaged in protected activity, he can only rely on alleged discriminatory or retaliatory treatment that occurred <u>after</u> he engaged in protected activity to establish his retaliation claims. Defendants correctly point out, however, that at least on two occasions, Plaintiff pleads allegedly retaliatory treatment that arose <u>before</u> he engaged in protected activity. According to the Complaint, Plaintiff first engaged in protected activity in November 2004. Therefore, by definition, any alleged mistreatment by Defendants that occurred before this time could not have been retaliatory. Thus, the Court will not consider as part of Plaintiff's <u>prima</u> <u>facie</u> case the following:

> [(1)] On or about October 13th 2003, Wilson accused Plaintiff of throwing out McMahon's reports and threatened to fire him."

> [and]

> [(2)] "On or about October 14th 2004, Wilson held a staff meeting. When Plaintiff arrived at the meeting, he was told that he, a senior officer, would be working the midnight shifts because McMahon was reassigned to his shifts. Sergeant Robert Romeo had an intense discussion with Plaintiff about McMahon taking his shifts. After the discussion, Romeo compiled a report stating that Plaintiff started a fight with him; however, no such fight took place. As a result, Wilson removed Plaintiff from the SWAT team, which not only precluded him from receiving at least eight hours of overtime per week, but prevented him from completing the entire in-service SWAT team training course."

(Compl. ¶¶ 19-20.)

After Defendants filed their motion to dismiss and pointed out the discrepancy in time-frame, Plaintiff filed his memorandum in opposition and attempted to supplement, if not alter, the facts:

> In May 2003, Plaintiff approached Wilson about the purported extra-marital affair. (Platt Aff. ¶ 2). Plaintiff expressed his concerns of police scheduling, and indicated that Wilson's discretionary authority involving matters of police staffing was clouded by his personal relationship with McMahon, rather than being based on objective criteria, which would be in the best interest of the public and officers under Wilson's control. (Platt Aff. ¶ 3.)

(Pl.'s Mem. in Opp'n 16.)  Generally, a district court should decide a motion to dismiss on the complaint alone, excluding additional evidence, affidavits, exhibits, and factual allegations contained in legal briefs or memoranda.  <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000).  However, the following materials may be considered on a Rule 12(b)(6) motion to dismiss:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

<u>In re Merrill Lynch & Co. Research Reports Sec. Litig.</u>, 273 F.

Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (citations omitted), aff'd on other grounds, <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d 161 (2d Cir. 2005), <u>cert.</u> <u>denied</u>, 546 U.S. 935, 126 S. Ct. 421, 163 L. Ed. 2d 321 (2005). Neither Plaintiff's memorandum in opposition to the motion or his affidavit fall within these categories. It escapes the Court how Plaintiff could omit such an integral fact from the Complaint, but it nonetheless, cannot consider it for purposes of deciding this motion.

C.  <u>Plaintiff's First Amendment Claim</u>

In order to establish a First Amendment claim of retaliation, a public employee must show that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a casual connection existed between speech and adverse employment action, so that it can be said that his speech was a motivating factor in the determination." <u>Cobb v. Pozzi</u>, 363 F.3d 89, 102 (2d Cir. 2003). Whether speech addresses a matter of public concern is a question of law to be "'determined by the content, form, and context of a given statement . . . .'" <u>Johnson v. Ganim</u>, 342 F.3d 105, 113 (2d Cir. 2003) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)).

Although reporting a purported affair is, on its face, not a matter for public concern, Plaintiff offers that a closer examination of the statement reveals a different intention.

Plaintiff alleges that in the November 2004 meeting in which he informed Steudte about the affair, that he also voiced his concern about McMahon being permitted to work as a plainclothes officer, which was prohibited because she had not yet graduated from the police academy. (Compl. ¶ 5.) Plaintiff argues that this presents an issue of public concern sufficient for the First Amendment claim because an officer serving in such capacity, who has not completed adequate training, poses a threat to public safety. (Pl.'s Mem. in Opp'n 13.)

Recently, in Garcetti v. Ceballos, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006). To determine whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) "whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008) (quoting Garcetti, 547 U.S. at 418.) Ruotolo involved an NYPD Sergeant with 20 years service when he retired in 2004. In October 1999, Plaintiff was serving as the

Training and Safety Officer for the 50th Precinct in the Bronx. When a local newspaper reported possible contamination and health risks at the precinct from underground gasoline storage tanks, Ruotolo was assigned-in his capacity as Safety Officer-to survey employee illnesses and deaths that might be related to this potential environmental hazard. Id. at 186. Shortly thereafter, Plaintiff submitted his two-page report (the "October 1999 Report") titled "Survey Pursuant to Request," identifying a seemingly large number of cancers, miscarriages, birth defects and other health problems afflicting individuals working at the precinct. Id. Ruotolo recommended a thorough environmental evaluation, which was later performed. Id. After submitting the report, Ruotolo alleged that he experienced retaliation. The retaliation included: "frequent reassignments to undesirable shifts and to duties he considered beneath his rank and tenure, denial of use of leave time, transfer to a less desirable precinct, and discipline for trivial or fabricated reasons." Id. at 187. After Ruotolo brought his lawsuit, Plaintiff alleged in amended complaints that the retaliation took additional forms, including "verbal harassment by superior officers, denial of overtime assignments, his first negative performance review of his career, and excessive discipline for a minor infraction." Id. On Defendant's motion to dismiss pursuant to Rule 12(b)(6), the court determined that the speech sought to redress personal grievances and did not seek to advance

12

a public purpose; thus, Ruotolo's speech did not constitute speech on a matter of public concern, and the claim was dismissed.  <u>See</u> <u>id.</u>

Similarly, here, Plaintiff's meeting with Steudte, in which he claimed that Wilson gave McMahon preferential treatment in terms of more favorable shifts and overtime hours, primarily sought to address personal grievance with Wilson's conduct rather than advance public safety concerns.  Notwithstanding the Court's duty to interpret the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff was not acting as a private citizen, but was reporting to his superiors as part of his job as a police officer.  Accordingly, the Court DISMISSES Plaintiff's First Amendment claim.

D.   <u>Plaintiff's Due Process Claim</u>

Plaintiff claims that Order 83 violated his substantive due process rights under the United States Constitution because it infringed on his right to travel, right of free access, right of privacy, right of liberty, freedom of bodily restraint to compulsion, and freedom to walk or stroll.  "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'"  <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2d Cir. 1996) (quoting <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 538 (2d Cir.

1994)).  To show a violation of substantive due process, plaintiff must: (1) identify the constitutional right at stake, and (2) demonstrate that the government action was conscience-shocking or arbitrary in the constitutional sense.  Little v. City of New York, 487 F. Supp. 2d 426, 443 (S.D.N.Y. 2007) (quoting Lowrance, 20 F.3d at 537).  Government actions that have risen to the level of conscious-shocking behavior typically meet a high bar.  Id. (citing Riggins v. Nevada, 504 U.S. 127, 135, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992) (forced administration of antipsychotic drugs absent overriding justification and determination of medical appropriateness); Rochin v. California, 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183 (1952) (forcibly pumping a suspect's stomach); Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 252 (2d Cir. 2001) (gym teacher choking, punching in face, and ramming student's head into bleachers and against metal fuse box).

In this case, Plaintiff essentially argues that the Police Department Administration was granted too much discretion under Order 83 to decide when and if to grant permission for an officer to leave his own home.  With this unchecked power, Plaintiff argues, "there was potential for wholly arbitrary and capricious denial of an officer's constitutionally protected rights."  (Compl. ¶ 29 (emphasis added).)

Again, interpreting the facts in a light most favorable to Plaintiff, Plaintiff has failed to demonstrate that the level of

14

discretion granted in Order 83, or its successor Amended Order 83, shocks the conscience of the Court. Certainly, this case cannot be compared to the cases cited by the Court which involved very serious deprivations of constitutional rights. Most important to the Court's decision, however, is that Plaintiff's arguments are, without exception, speculative. Plaintiff does not allege that he attempted to leave his home and was denied permission. He simply argues that the rule <u>could</u> have lead to an arbitrary and capricious decision. Therefore, Plaintiff has failed to demonstrate that he has suffered any deprivation in violation of his substantive due process rights. Accordingly, his due process claim is DISMISSED.

E. <u>Plaintiff's Claim of Discrimination Under the ADA</u>

In order to establish a <u>prima facie</u> case under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001).

The only disputed issue here is whether Plaintiff, as a result of being subject to Order 83 for approximately one week, and subsequently Amended Order 83, suffered an adverse employment action. What constitutes an adverse employment action depends on the facts of the particular case; however, it has been determined

that an adverse employment action is one in which a "materially adverse change [has occurred] in the terms and conditions of employment." See Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997). The Second Circuit has suggested that adverse employment actions specifically include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999), none of which Plaintiff has suffered here.

Order 83 was issued nine months after Plaintiff took medical leave from the Police Department and applied to all officers on leave of duty. The guidelines of Order 83 required officers to report via telephone to a supervisor at the beginning and end of each shift time, and to remain available to the supervisor throughout the allotted period. If there was a desire to leave home for any reason, the officer was required to notify a Department supervisor. Officers on medical leave are paid full salary as if they were on active duty, and Order 83 merely required that such officers remain in contact with the Department during the designated shift time.

Although these requirements may have altered the characteristics of Plaintiff's duties while on leave, in no way can such be considered "materially adverse." Plaintiff has pled no facts that a supervisor refused to allow him to leave his home, nor is there any indication that the Order applied differently to

Plaintiff than it did to the other officers on leave at that time. The fact that Plaintiff may have been inconvenienced by the Order does not constitute an employment action that is adverse. See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993))). As a result, Plaintiff's ADA claim fails as a matter of law and is DISMISSED.

     F.   Plaintiff's Title VII Claim

Among its provisions, Title VII prohibits discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. Section 2000e-3(a) of title 42 of the United States code states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3 (2000).

To establish a _prima_ _facie_ case for retaliation under Title VII, a "plaintiff must demonstrate that '(1) []he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 129 (2d Cir. 2003) (quoting <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 116 (2d Cir. 2000)).

For the same reasons as discussed above, the issuance of Order 83 did not constitute any adverse employment action suffered by the Plaintiff. As a result, Plaintiff's Title VII claim fails and is DISMISSED.

G.  <u>Plaintiff's Equal Protection Claim</u>

A violation of the Equal Protection Clause under the Fourteenth Amendment requires that "(1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Crowley v. Courville</u>, 76 F.3d 47, 52-53 (2d Cir. 1996) (quoting <u>LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994)). There is no basis for

18

such claim here.  Order 83 and Amended Order 83 applied to every officer on leave from duty.  Plaintiff was not the only officer subject to Order 83, nor was he treated any differently than the others to whom it applied.  As a result, Plaintiff's claim alleging an Equal Protection violation must be DISMISSED.

H.  <u>Standing for Injunctive Relief</u>

Plaintiff seeks a permanent injunction preventing Defendants from requiring him to abide by Order 83.  "[A] plaintiff seeking injunctive relief cannot rely on the existence of a past injury, but must show that he or she is likely to suffer future injury."  <u>White v. First American Registry</u>, 230 F.R.D. 365, 367 (S.D.N.Y. 2005) (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).  Defendants argue that Plaintiff does not have standing to obtain the injunctive relief.  The Court agrees.  Because Plaintiff is retired from the Police Department, the Order is no longer applicable to him.  Given that Plaintiff is no longer employed by the Defendants, the requested relief is moot, as Plaintiff cannot show that he is likely to suffer future injury from the restrictions of Order 83 or the Department; therefore, Plaintiff lacks standing to obtain injunctive relief.  Plaintiff's claim for injunctive relief is DISMISSED.

I.  <u>Individual Defendants</u>

Defendants argue that all claims against the Board, Mayor

Epley, and the individually named board members must be dismissed.
The Court agrees. Plaintiff's sole allegation against Epley is
that he denied his grievance. Likewise, the claim against the
Board, based on failure to respond to a grievance which the
Plaintiff submitted, carries with it no additional allegations
whatsoever. Plaintiff fails to plead any facts that support
potential wrongdoing by the Board or any individual member of the
board. As a result, Plaintiff's claims against Mayor Epley and the
Board members are DISMISSED.

II. <u>Plaintiff's Cross-motion to Amend</u>

Plaintiff seeks to amend his Complaint because "newly
discovered evidence has come to light that was unavailable at the
time of the original complaint." (Pl.'s Aff. in Opp'n ¶ 9.)
Federal Rule of Civil Procedure 15(a) generally governs the
amendment of pleadings. Rule 15(a) provides that

> [a] party may amend the party's pleading once
> as a matter of course at any time before a
> responsive pleading is served . . . .
> Otherwise a party may amend the party's
> pleadings only by leave of court or by written
> consent of the adverse party; and leave shall
> be freely given as justice so requires.

Fed. R. Civ. P. 15(a); <u>see also</u> <u>Lucente v. Int'l Bus. Machs. Corp.</u>,
310 F.3d 243, 259 (2d Cir. 2002); <u>Branum v. Clark</u>, 927 F.2d 698,
705 (2d Cir. 1991). Leave to amend should be denied only because
of undue delay, bad faith, futility, or prejudice to the non-moving
party, and the decision to grant or deny a motion to amend rests

20

within the sound discretion of the district court.[3] <u>Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 603-04 (2d Cir. 2005); <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995).

A. <u>Undue Delay</u>

It is well established that courts will grant leave to amend where the moving party can demonstrate that they have not unduly delayed in proposing the amendment, and provide a valid justification for any such delay. <u>See</u> <u>Assam v. Deer Park Spring Water, Inc.</u>, 163 F.R.D. 400, 406 (E.D.N.Y. 1995). The Second Circuit has stated that "Rule 15(a) requires courts to grant leave freely . . . where justice so requires, and [] have held repeatedly that mere delay is not, of itself, sufficient to justify denial of a Rule 15(a) motion . . . ." <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 339 (2d Cir. 2000) (internal citations omitted).

With regard to Plaintiff's amendment here, the Court finds that Plaintiff did not unduly delay in seeking leave to amend. Less than five months passed between the filing of the original Complaint and Plaintiff's motion to amend. Such a delay, although not insignificant, is much less than other cases where courts have permitted amendment. <u>See</u> <u>Richardson Greenshields Sec., Inc. v. Lau</u>, 825 F.2d at 653 n.6 (citing, for example, <u>State</u>

---

[3] The Court observes that bad faith is not seriously at issue in this case. Therefore, the Court will only discuss undue delay, prejudice to the Defendant, and futility.

21

<u>Teachers Retirement Bd. v. Fluor Corp.</u>, 654 F.2d 843, 845-46 (2d Cir. 1981) (amendment allowed after three-year interval); <u>Howey v. United States</u>, 481 F.2d 1187, 1188-89 (9th Cir. 1973) (amendment allowed after five-year interval and on second day of trial); <u>Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.</u>, 392 F.2d 380, 383 (2d Cir. 1968) (amendment allowed after three-year interval and notice of trial readiness); <u>Zeigan v. Blue Cross and Blue Shield</u>, 607 F. Supp. 1434, 1438 (S.D.N.Y. 1985) (amendment allowed after three-year interval); <u>Green v. Wolf Corp.</u>, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (amendment allowed after four-year interval). Furthermore, Plaintiff has offered reasonable justification for the desire to amend, offering that new evidence has been discovered since the original complaint. Accordingly, the Court finds no demonstration of undue delay.

B. <u>Prejudice to Defendant</u>

Defendants do not argue that they would be prejudiced if Plaintiff is permitted to amend his Complaint at this time. Plaintiff offers additional facts in the Proposed Amended Complaint that, at most, would compel additional discovery by Defendants. As a general matter, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." <u>United States v. Continental Ill. Nat'l Bank & Trust of Chicago</u>, 889 F.2d 1248, 1255 (2d Cir. 1989). Therefore, the Court finds that granting Plaintiff's motion to

22

amend would not unfairly prejudice Defendant.

C. <u>Futility of the Amendment</u>

Leave to amend a complaint need not be granted when amendment would be futile. <u>See</u> <u>Ellis v. Chao</u>, 336 F.3d 114, 126 (2d Cir. 2003). "In this Circuit, an amendment is considered futile if the amended pleading fails to state a claim, or would be subject to a motion to dismiss on some other basis." <u>Horvath v. Daniel</u>, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (quoting <u>Tri-State Judicial Servs., Inc. v. Markowitz</u>, 624 F. Supp. 925, 926 (E.D.N.Y. 1985) (internal quotation marks omitted)). When determining whether amendment would be futile, a court must accept as true all well-leaded allegations and draw all inferences in favor of the pleader. <u>See</u> <u>Id.</u> at 423.

Defendants argue that, even taking the Proposed Amended Complaint as true, Plaintiff still fails to assert a valid claim, and the amendment is "legally deficient." (Defs.' Mem. in Reply 1.) After reviewing the Proposed Amended Complaint in detail, the Court agrees with Defendants. Even presuming all of the asserted facts to be true, Plaintiff's Proposed Amended Complaint could not withstand a motion to dismiss pursuant to Rule 12(b)(6). As a result, it is futile to allow Plaintiff to amend his Complaint, and his motion to amend is DENIED.

<u>CONCLUSION</u>

For the reasons stated herein, Defendants' motion to

dismiss is GRANTED.  All of Plaintiff's claims are DISMISSED with
prejudice.  Additionally, the Court DENIES Plaintiff's cross-motion
to amend the Complaint.  The Clerk of the Court is directed to mark
this matter CLOSED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:      September  21 , 2009
            Central Islip, New York